Filed 1/15/16  In re Y.F. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Y.F., a Person Coming Under the Juvenile Court Law. | B264365 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK98089) |
| Plaintiff and Respondent, | |
| v. | |
| J.F., | |
| Defendant and Appellant; | |
| Y.F., | |
| Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Michele Anne Cella, under appointment of the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Minor.

* * * * * * * * * *

Father J.F. and counsel for the now one-year-old child, Y.F., appeal from jurisdiction and disposition orders removing the child from father's care. Y.F. was four months old at the jurisdiction and disposition hearing. The day after Y.F. was born in December 2014, the Los Angeles County Department of Children and Family Services (Department) received a referral that mother M.M. may neglect Y.F. because she failed to reunify with her two older children due to her unresolved abuse of methamphetamine and marijuana over the course of many years. The referral did not mention father, who had been in a live-in relationship with mother for a year before Y.F. was born. The Department did not file a dependency petition until March 12, 2015. The Department did not initially recommend Y.F. be removed from her parents' care.

The Department filed an amended petition April 20, 2015, which included allegations that father had a history of marijuana and alcohol use. The Department's report for the adjudication and disposition hearing recommended Y.F. remain with her parents with family maintenance services. But on April 23, 2015, the day of the adjudication and disposition hearing, the Department filed an ex parte application seeking to change the recommended disposition. The Department recommended Y.F. be removed from her parents' care.

The court sustained allegations that mother failed to reunify with Y.F.'s half siblings due to mother's illicit drug use, and that father has a history of marijuana and alcohol use and currently uses marijuana which renders him incapable of providing regular care and supervision of Y.F. The court removed Y.F. from the parents' custody, and ordered reunification services.

Mother has not appealed the jurisdiction and disposition orders, and therefore, we do not consider here appellants' arguments regarding the findings and orders concerning mother. On the other hand, the Department has not asked us to find father's appeal is not justiciable on the basis of *In re I.A.* (2011) 201 Cal.App.4th 1484, and therefore, we consider father's appeal on the merits.

2

Father and Y.F. contend there was insufficient evidence that father's marijuana use put Y.F. at substantial risk of serious physical harm such that removal from father's care was necessary to protect Y.F. We disagree and affirm the orders.

**BACKGROUND**

At the adjudication and disposition hearing on April 23, 2015, the court received various Department reports and other evidence, including positive drug test results for father on March 17, April 19 and 20, 2015. No party offered live testimony, and there was no objection to the admission of any of the Department reports. The positive drug test results were admitted over father's objection.

The evidence concerning father is consistent in each of the Department's reports. We quote from the report submitted with the Department's ex parte application on the date of the adjudication and disposition hearing.

"[Father] is also a user of marijuana, which until recently, was mother's drug of choice. Father's use of marijuana indicates very high risk to [Y.F.].

"[Father] reported that when he was [13]-years-old, he started to value marijuana for its medicinal properties. [Father] reported that from then on, and for the past ten years, he has used marijuana approximately 8 to 10 times a day to help relieve his aches and pains from being bent over all day looking inside car engines working as a mechanic. [Father] reported that sometimes he smoked as much as 15 times a day. [Father] reported that he cut down on his marijuana use after he appeared in Court on 03/17/2015.

"[Father] reported that his medicinal marijuana card has expired and that he has not renewed it. [Father] reported that, currently, he smokes marijuana approximately two times a week. [Father] reported that since he no longer has a valid medicinal marijuana card, he gets his marijuana supply from his friends.

"[Father] appears to be under the false belief that he is clean and sober because his marijuana use is for medicinal purposes, despite the fact that his marijuana use is not being supervised by a physician or any type of medical professional and his marijuana supply is not directly from a medicinal marijuana vendor.

3

"[Father] admitted that he has never been examined or diagnosed by a primary care physician, but that he believes that he suffers from arthritis. [Father] reported that his medicinal marijuana doctor relied on his [(father's)] self reports and completion of a questionnaire to determine his medical need for marijuana as a course of treatment. [Father] reported that he has never sought any other form of treatment for his aches and pains.

"[Father] (who is 23-years-old) reported that when he was 20-years-old, he lived in the Hollywood area and that he befriended people who used crack. [Father] reported that he used crack regularly for a period of approximately 5 months.

"[Father] reported that he tried methamphetamine for the first time when he was 22-years-old. [Father] reported that he used methamphetamine regularly for approximately one month and then he stopped. [Father] reported that he resumed his methamphetamine use approximately one month later, and that he used methamphetamine regularly for approximately two months. This was approximately six months prior to meeting mother in December 2013.

"[Father] reported that when he met the mother, they smoked marijuana together regularly. [Father] admitted to using methamphetamine with the mother a few times. [Father] reported that his friends could not understand why he was involved with the mother as she was in a bad condition due to her heavy use of methamphetamine.

"[Father] reported that on 04/24/2014, he knew that the mother left the family home to go buy drugs.

"[Father] does not consider that his marijuana use could easily trigger the mother's illicit drug use.

"[Father] had an early onset of alcohol and illicit drug use during his childhood and he has never sought treatment. [Father] has no insight into his illicit drug use and he has overly emphasized the medicinal properties of marijuana. [Father] does not grasp that although he smokes the marijuana outside of the family home, he is under the influence of marijuana while he is in the home assisting with the care and supervision of his child, thereby placing [Y.F.] at risk of harm and future abuse and neglect."

4

Father argued there was no nexus between his marijuana use and any risk of harm to Y.F., and the baby came to the attention of the Department only because of mother's long history of drug abuse and neglect of her children. Counsel for Y.F. acknowledged that mother's unresolved drug abuse and extensive history with the Department warranted dependency jurisdiction but argued Y.F. is father's first child and there was no evidence he knew mother had these issues or had previous children removed from her care. The Department focused on father's use of marijuana up to eight to ten times a day, observing, "I wouldn't let him work on my car if he was smoking a joint ten times a day let alone take care of my kid."

The court found there was a sufficient nexus between the parents' drug use and the risk of harm to Y.F., "in that the parents are co-parenting and living together and the child needs to be raised in a drug-free home." In response to the arguments of father and Y.F.'s counsel seeking to minimize father's present marijuana use, the court observed, "So we are clear, [counsel], according to the last minute [report], he may be using marijuana once or twice a week now, but he said he cut down on account of court intervention when he came in. So it's clear to this court that if we don't intervene, this child is going to be at risk."

When Y.F.'s counsel requested the court remove Y.F. only from mother's custody, suggesting that "[p]erhaps something can be arranged in the next couple of days with the mother moving out or the father moving out," the court replied, "I've got a very young child which I'm declaring [a dependent]. Something needs to be done and it needs to be done immediately. And so for the best interest of this child, I'm finding that pursuant to 361(c), continuance in the home of the parents would create a substantial risk of detriment to the child's safety, protection, physical, emotional well-being, . . . and the child will be removed."

The court removed Y.F. from her parents' custody and ordered suitable placement, with reunification services for both parents. The court ordered monitored visits, with discretion to liberalize visitation as to father. The court also ordered the Department "does have discretion to meet and confer with the parents to try and make arrangements if

5

it's appropriate for mother to leave the father to have the child returned." Nothing in the record before us suggests father ever made arrangements to leave mother so as to regain custody of Y.F.

## DISCUSSION

**I.** *The Governing Statute and Standard of Review.*

As explained in *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216 (*Christopher R.*):

"The purpose of section 300 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.' (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.'

"Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*)), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child (*In re N.M.* (2011) 197 Cal.App.4th 159, 165). The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

"In addition, the Legislature has declared, 'The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety,

6

protection and physical and emotional well-being of the child.  Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment.'  (§ 300.2.)  Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is 'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety.'  (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.)

"We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence.  (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)  Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.'  (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763 (*Drake M.*); *In re Savannah M.*, *supra*, 131 Cal.App.4th at p. 1393.)"  (Fn. omitted.)

## II.     *The Jurisdiction Findings Concerning Father Are Supported by Substantial Evidence.*

Marijuana use, alone, is not sufficient to establish dependency jurisdiction, without any evidence that such usage places a child at substantial risk of serious physical harm or illness.  (*Drake M.*, *supra*, 211 Cal.App.4th at p. 769.)  Put differently, physical harm to a child is not presumed from a parent's substance abuse in every dependency case.  (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 728 [mother's substance abuse did not create substantial risk of harm to 13-year-old daughter].)  On the other hand, in the case of very young children, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm."  (*Drake M.*, at pp. 766-767.)

Appellants argue the sustained allegations only establish father *used* marijuana, and not that he *abused* marijuana.  While that is correct, we consider not only the sustained allegations of the petition but also the evidence before the court.  (*In re Jessica*

*C.* (2001) 93 Cal.App.4th 1027, 1037-1038 ["[A]fter a hearing on the merits has been held on the petition, the focus must necessarily be on the substance of the allegations found true by the juvenile court, not idiosyncratic particulars of the social worker's precise language."].) We find there was substantial evidence that father abused marijuana and required services to understand and remove the risks to Y.F. attendant to his marijuana abuse. Father reported that for 10 years, from age 13 to the present, he smoked marijuana eight to ten times a day, sometimes up to 15 times a day. When in the company of friends who used crack and methamphetamine, father also used those drugs for several months at a time. He never sought treatment for drug abuse and had no insight into his illicit drug use, telling the Department he believed he was clean and sober because he used marijuana for medicinal purposes.

All the parties cite *Drake M.*, a leading authority on the propriety of dependency jurisdiction over a parent who is alleged to be a substance abuser. The court in *Drake M.* found no evidence the father there was a substance abuser. The father in *Drake M.* was employed and had no criminal history; 14-month-old Drake was well cared for; there were no allegations of abuse in the home; there was family support; and there was no evidence the child was exposed to marijuana, drug paraphernalia or second-hand smoke. The father in *Drake M.* had been diagnosed with arthritis due to his work as a cement mason, on his knees three hours a day, and a Kaiser doctor had prescribed pain medications, but the pills did not work for him so he sought marijuana as an alternative treatment. He possessed a valid recommendation from a physician to use marijuana for treatment of his chronic knee pain. Father testified he smoked at the beginning of the day or at lunchtime, and a minimum of four hours passed between when he smoked and when he saw Drake after work. (*Drake M., supra,* Cal.App.4th at pp. 760-761, 768-769.)

The facts of this case are not sufficiently analogous to *Drake M.* for us to reverse the jurisdiction findings. As was the case in *Drake M.*, father in this case was employed and had no significant criminal history; there were no allegations of abuse; four-month-old Y.F. was reaching developmental targets; and there was no evidence that Y.F. was exposed to marijuana, paraphernalia or second-hand smoke.

8

What distinguishes this case from *Drake M.* is that here, father never sought medical treatment for his aches and pains, had previously received a marijuana card based solely on his own self-reporting, had no current license to use marijuana, which he nonetheless obtained from friends (presumably, illegally) and used heavily throughout the day; he began to limit his use only one month before the jurisdiction hearing, due to the pendency of these dependency proceedings, and he had no insight into the risks of such heavy marijuana abuse. Like the court in *Christopher R.*, *supra*, 225 Cal.App.4th at page 1220, "on this record the juvenile court properly found [father's] persistent and illegal use of marijuana demonstrated an inability to provide regular care" for infant Y.F.

### III.     *The Disposition Order Removing Y.F. From Father's Care Was Proper.*

The same evidence that supports jurisdiction is also substantial evidence that supports the disposition order removing Y.F. from father's care. Father and mother lived and cared for Y.F. together. Both parents had long term, untreated and unresolved substance abuse problems. Y.F. was such a young and vulnerable baby that their substance abuse placed her at risk of harm. Father knew that, six months before Y.F. was born, mother left their home to go buy drugs, and he was apparently unable to stop her. Father and mother had used methamphetamine and marijuana together many times. As a practical matter, there was simply no way the court or the Department could ensure Y.F. would remain safe in her father's custody while he lived with mother, until father had seriously addressed his substance abuse problems.

### DISPOSITION

The jurisdiction and disposition orders are affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

9